## No. 9523.

PEETE, AS ADMINISTRATOR, ET AL. *v.* RENSHAW, ET AL.

Decided February 7, 1921. Rehearing denied March 7, 1921.

Action to set aside report of receiver and share in proceeds of property. Petition denied.

### *Affirmed.*

1. ACTIONS—*Receivership.* Plaintiff in an action in which a receiver is appointed to liquidate the whole property, cannot change his suit into one for mere judgment and execution and so avoid the receivership, while there are creditors in court.

2. RECEIVERS—*Claims.* It is not the duty of a receiver to look after and prosecute claims of creditors against the receivership estate.

3.        *Final Orders—Notice.* Final orders winding up a receivership are not invalid on account of lack of notice to non-resident claimants not represented by resident counsel.

4.        *Petition to Set Aside Final Report—Delay.* After a delay of three years from the commencement of the suit and one year from the final report and discharge of the receiver, a petition of one who has not presented his claim to the court for final allowance, to set aside the receiver's report and discharge and to be allowed to present his claim and have a re-distribution of the trust estate, will not be granted.

*Error to the District Court of Clear Creek County, Hon. H. S. Class, Judge.*

Mr. EDWIN H. PARK, Mr. WILLIAM B. RODDA, for plaintiffs in error.

Mr. JOHN W. SLEEPER, Mr. E. M. SABIN, Mr. HUBERT L. SHATTUCK, for defendants in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

PEETE, administrator of Matilda Chesbro, filed petition to set aside the report of Stimson, receiver, and be allowed to share in the proceeds of property which had been held by the receiver, on the ground that his intestate was a creditor who was entitled to share with others in those proceeds. The court below denied the petition. Comstock, trustee in bankruptcy of F. B. Chesbro, filed a similar petition with like result. They join as plaintiffs in error.

The Boston and Colorado Power and Water Company owned certain property and franchises in Clear Creek County and had certain water rights in Boulder County. It was heavily indebted to defendant in error, Renshaw, and others. May 31st, 1913, Renshaw brought suit in Clear Creek County District Court against said company on promissory notes and for moneys advanced, alleging that the notes were part of the purchase price of the Clear Creek

County property, and also alleging other matters, including
mismanagement, that the company's assets and franchises
were in danger, and the necessity, in the interest of the
creditors and others, for a receiver to wind up the corpora-
tion and praying for judgment for $78,091.96 with interest,
for a receiver with power to wind up the company, to sell
its property, and, after expenses, to pay the creditors who
should file claims in court, ratably, and for general relief.

E. C. Stimson was appointed receiver "with full power
and authority" *inter alia,* to wind up the company's affairs
and dissolve the same, to continue the business, "to sell any
and all property of said defendant company upon order of
this court" and apply the proceeds first to expenses and
then to the creditors "in proportion to their respective
claims as the same shall be filed and approved in and by
this court," then to the stockholders. "Said receiver shall
have power and authority to pass upon all claims due from
said defendant company and report the same to this court."

There was an answer denying the mismanagement, al-
leging fraud in the sale of the Clear Creek property by
Renshaw to the Company and offering to rescind.

No order was made by the court to the receiver to sell
the property, and he never did so.

October 6, 1914, Renshaw had judgment for $100,730.79
and execution awarded. In 1916 he obtained a special or-
der for leave to issue execution, and July 13th of that year
he levied an execution on the Clear Creek property and
bought it in at execution sale, for $72,000. He satisfied all
creditors except the Chesbros, and credited the remainder
of his bid on his judgment. By direction of the court the
sheriff gave the receiver $25,000 of the proceeds of the
sale to cover the expenses of the receivership.

In the meantime the Chesbros had sent to the receiver
statements of their claims, but they did not file them in
court. *March 16, 1914,* the receiver wrote to F. B. Chesbro
a letter in which he suggested that he consult an attorney,
saying that he could not advise him how to proceed.
*July 25th, 1914,* Wardner, attorney in Boston, for the Ches-

bros, wrote to the receiver, enclosing the claim of Mrs. Chesbro, and asking the receiver to file it in its proper place, and he enclosed other papers for filing in other litigation. August 6, 1914, Wardner wrote the receiver acknowledging the receipt of a letter and saying: "You do not say whether you have filed" the claim "but I assume that you have." He also encloses F. B. Chesbro's claim, and asks the receiver to file it, and encloses other papers for filing in other matters. August 10, 1914, answering Wardner's of August 6, the receiver says he cannot advise Wardner in regard to the conduct of the case. He suggests sending papers directly to the clerk, but says that if they are sent to him he will "dispose of them as you may desire." The receiver notified the Chesbros, presumably by mail, that he would present their claims to the court at Georgetown on September 20, 1916, and ask for instructions in regard to them. He did not do so, but on September 23rd, 1916, at Littleton, without notice to the Chesbros, he presented his *final report* and was discharged. It nowhere appears that the Chesbros appeared in Georgetown on the 20th or made any attempt to do so or made any attempt to prove their claims or obtain a hearing on them. The order of discharge directed the receiver to transfer certain accounts and bills receivable held by him, which he had accumulated in operating the Clear Creek property, to Renshaw to be credited upon the judgment, which he did, and it also directed him to pay and he paid to Renshaw the balance of the $35,000 received from the sheriff, which remained in his hands after all expenses had been paid. This balance was $3,775.63 and the same was credited upon the judgment, a balance of which still remains unpaid. It does not appear that the Chesbro claims were ever presented to the court or allowed or disallowed or that the receiver "passed upon" them. The Chesbros were non-residents and had no attorney in this state.

September, 1917, a year after the receiver's discharge, plaintiffs in error filed their separate petitions, asking that the judgment for plaintiff and all orders subsequent to

July 10, 1916, be annulled, that the receivership be re-opened, a new receiver be appointed and that petitioners and other creditors who should come in have general relief. The petitions were heard upon affidavits and arguments, were denied and the present writ of error was thereupon brought.

At the trial upon which Renshaw recovered his judgment the defendant did not appear. It is now claimed that the notice to call the case for trial was insufficient. Counsel, however, have not assigned error upon this point, and on page 20 of their reply brief they apparently abandon the question, so we do not further notice it.

Counsel for the receiver in his brief claims that the issue of execution and the sale under it were proper and right, because, as he claims, the case was thereby rendered a mere suit for money judgment.

We think this is wrong. The complaint and the order of the appointment of a receiver show that a receivership to liquidate the whole property was intended and created. Renshaw could not change his suit into one for mere judgment and execution, and so avoid the receivership, while there were creditors in court, even with the receiver's consent. All creditors, therefore, who came in according to the terms of the order of the receiver's appointment were entitled to demand liquidation and distribution.

There is much dispute in argument as to whether the sending of the claims to the receiver was a compliance with the requirement of the order of appointment and whether the claimants were justified in assuming that their claims were properly filed. For the purposes of this decision, however, we shall treat the claims as properly filed in court, and we shall assume that, having so filed them, the claimants treated them as they did after filing them with the receiver. What then is the position of these claims in equity? Was it not their duty to take some action to present the claims? No one else had such a duty. It was not the receiver's duty to look after the claims for them. They made no move for three years. They never even employed

an attorney or any one else in Colorado to look after the business. They seemed to have assumed that the receiver would look after it for them. When they were notified that the receiver would present the claims and ask for instruction they made no move. Then was the time for action if never before. They knew that any other creditor had a right to object to their claims and that when they were presented, if at no other time, such objection could be made; but they did nothing; they paid no attention to any other proceedings in the case, the execution orders, for instance. The final orders were not invalid on account of lack of notice to the claimant because they were non-residents without an attorney here, Code 1908, § 406. What right had they to neglect the prosecution of their claims for three years and for nearly a year after they had notice that they were to be presented and instructions asked in regard to them, and after the receiver was discharged?

The judgment should be affirmed.